IRONCLAD MFG. CO. v. DAIRYMAN'S MFG. CO.

SAME v. ORANGE COUNTY MILK ASS'N.

(Circuit Court of Appeals, Second Circuit. February 1, 1906.)

No. 188.

PATENTS—INFRINGEMENT—MILK CANS.

The Haigh patent, No. 607,433, for a milk can, is limited to the specific means shown for uniting the reinforcing neck portion with the neck portion of the body of the can, by an interlocking flange as its only novel feature, in view of the prior art, and it is not infringed by a construction which does not employ such interlocking means.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 138 Fed. 123.

R. N. Kenyon and Henry D. Williams, for appellant.

Frank S. Black, for appellee.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The decree appealed from adjudged the validity, and the infringement by'the defendant, of claim 1 of letters patent No. 607,433, granted July 19, 1898, to Henry B. Haigh for a milk can. The assignments of error challenge the correctness of the decision in both respects. The controversy between the parties is presented in a very voluminous record, and the proofs disclose a mass of evidence, most of which is of little value upon the issues really involved. The question of the validity of the patent is to be determined by ascertaining what it describes and claims which had not been described in previous patents, and construing the claim so far as its language will permit so as to secure to the patentee that which was really new and patentable in view of the prior art. The art to which the patent relates is a very simple one, and the description and drawings in the patent in suit and in the prior patents show so plainly what had been done before and what was new that no expert testimony can materially clarify or obscure the inquiry. The question of infringement is to be determined by ascertaining whether the cans manufactured by the defendant embody all the essential elements of the first claim of the patent in suit. There is no dispute of fact in regard to the features of the cans manufactured by the defendant, and the opinions of the experts upon the question whether or not they embody all the essential parts of the claim are of no assistance to the court, because their value depends altogether upon the construction to be given to the claim, and this is a matter wholly for the court.

The patent relates to a class of milk cans—those having a neck made of two layers of metal—which was well known in the prior art and had been the subject of numerous patents. Cans used in transporting milk upon wagons and in railway trains are subject to rough handling, and it is desirable that the neck be stronger and more rigid than the other parts, in order to resist the strain to which that part is especially liable. It is also important that there be no seams or crevices or rough

surfaces on the inside to interfere with a thorough cleansing when the milk has been removed, as otherwise they are not "sanitary," in the sense in which that term is used by milk dealers. To save the extra expense of making the entire can of heavy metal, while sufficiently strong in the neck, inventors, at an early period, conceived the feasibility of making the body of a single sheet of metal, with a neck reinforced by an additional layer. This could have been readily done by superimposing an extra layer on the outside of the neck, if it had been practicable to make the neck and body of a can from the same sheet of metal by the swaging or stamping process required by facility and economy of manufacture. When the body and neck parts have to be swaged or stamped each from its own sheet, in order to unite the two parts so that they would not pull apart in use, it seemed necessary to solder or rivet them together; and this not only added to the cost of manufacture, but produced an "unsanitary" can.

The patent to Hatch of March 5, 1872, for an improvement in milk cans, in which the neck is referred to as the bowl of the can, and the body as the breast, describes a breast of sheet metal stamped by suitable dies with an upwardly projecting portion adapted to receive the neck or bowl of the can, and a bowl stamped with a downwardly projecting section so formed as to be received into the upper end of the breast; the two parts being soldered together and constituting a neck of two layers of metal, and one overlapped by the other. By this construction an overlapping edge is presented at the inside lower end of the neck. This edge is to be "filed down so as to present a smooth surface at this joint" to facilitate the cleaning of the can.

The patent in suit is for an improvement in cans of this type, which consists in joining together the two overlapping layers by an arrangement which dispenses with soldering or riveting them together. As particularly described in the specification, this is effected by providing the inner one of the overlapping layers (termed neck members) at its extreme end with projecting flange, "bent or turned outwardly at a relatively sharp angle to form a locking flange," and the outer one with an annular recess adapted to receive the flange. When the parts are assembled together, the flange "rests" in the recess, and the parts engage sufficiently to form a flush joint. The specification states that preferably the neck member of the mouth will be of the same area as the neck member of the breast, and preferably one member will completely overlap the other throughout the area thereof. It also states that, "when the parts have been assembled and firmly locked together, they are subjected to the usual coating or tinning operation, whereby the seams are filled and the joints are firmly cemented together by the coating metal, which acts as a soldering medium." In the drawings the neck thus formed is shown to be of two layers throughout its area; each neck section extending from the breast to the mouth of the can. The locking flange and recess, as shown in the drawings, interlock merely in the sense that the recess completely houses the flange in such an engagement as to unite the two layers together by a flush joint at the end of the inner neck member. The claim is as follows:

143 F.—33

"(1) A milk can comprising a breast member provided with a neck portion, and a mouth member provided with a neck portion; one of said neck portions extending within and being overlapped by the other neck portion, and one of said neck portions having a flaring reinforcing and locking flange, and one of the said members having an annular recess for the reception of said flaring flange, whereby the breast member and mouth member are locked together by a flush joint interlocking means."

It will be observed that, although the drawings show a can of two layers throughout the vertical width of the neck, the claim is not limited to such a construction. Unless each of the neck members is of the same area as the other, the two cannot completely overlap. The specification states that they are "preferably" of the same area, and that they are "preferably" to overlap completely, in order to eliminate any limitation which might be implied if these terms had not been used, and thus to save the claim from being so narrowed that a can otherwise like that described would not be covered by its terms, if the neck were not of double layers throughout the entire neck area.

The patented can manufactured by the complainant is, beyond doubt, an excellent article for the uses which it is designed to serve, and enjoys a commercial success and a measure of popularity with milk-dealers which affords emphatic testimony of its superiority. Whether this popularity is not attributable to superiority of workmanship rather than to any patentable improvement which it embodies may be questionable. All the components of the first claim, except the so-called interlocking means, were old separately and collectively in the prior art; and, when the application for the patent was pending, the Patent Office rejected for want of novelty a claim originally contained in it, which enumerated all these components except the interlocking means. The applicant acquiesced in the rejection, and amended his claim by adding the interlocking means. Thus it was conceded, and the complainant is precluded from asserting the contrary, that, except for the interlocking means, there was no novelty in the invention claimed.

A reference to three only of the numerous prior patents which have been introduced in evidence by the defendant suffices to show that, if any patentable novelty was contributed to the claim by adding these means to the other component parts, it resides in a very narrow compass.

In the patent to Tiepke of December 6, 1887, for an improvement in milk cans, the mouth of the can is referred to as the bowl. This patent shows the double layer neck formed by an extension of the bowl and an extension of the breast, and one extension being inserted within and overlapped by the other, "and firmly united, as by soldering." The can of this patent has also a double layer breast; the bowl being extended so as to inclose not only the neck, but also the breast. In this can there is no overlapping edge inside the neck, and the extensions of the breast and mouth members are united by a flush joint.

In the patent to Tripp of January 10, 1893, the double layer neck is shown as made by overlapping the lower portion of the mouth with the upper portion of the breast; the extension of each part being integral with it, and so formed that the extension of the mouth will tele-

scope with the extension of the breast throughout the area of the neck. This construction presents a flush joint inside the neck at its lower end at the terminus of the mouth member.

The patent to Wolf of March 13, 1894, describes a milk can in which the overlapping portions of the neck are extensions of the mouth and breast, respectively, and made integral therewith. In the can of this patent the mouth extension is inserted in an annular off-set formed in the breast extension, and which constitutes a recess for housing the mouth extension. When assembled, the two extensions present a flush joint at the place where they are connected on the inside of the neck. This can does not have a double layer neck which extends the whole distance between the mouth and the breast, nor does the inner one of the overlapping neck members have a flaring interlocking flange.

These prior patents disclose that Haigh was not the first to devise means whereby the breast member and the mouth member are joined together in the neck portion of the can by a flush joint connection, and that his only departure from the prior art consists in his peculiar method of constructing a flush joint connection. In view of the Wolf patent, it is obvious also that there was no novelty in constructing a flush joint connection in the double layer neck of the can, by which the mouth and breast members engage, and the end of one is completely housed in the end of the other, and does not present an outlying edge on the inside of the neck. Whatever patentable novelty there is in the assemblage of the parts enumerated in the claim in controversy must consequently be found in the details of construction which differentiate the so-called interlocking means of the claim, which are strictly only engaging means, from means such as are shown in the Wolf patent. It follows that the claim must be limited to a can which has the specific locking means enumerated in the claim.

It may be true, as is asserted by the complainant, that the patented can is the first which was ever actually manufactured and put upon the market which had a neck of double layers connected by a flush joint, or in which there was no soldered surface upon the inside. But whether such cans as are described in the prior patents were ever actually made, or not, is an immaterial consideration. These patents' show so plainly what they purport to show that he who runs can read; and their effect in negativing the novelty of the claim cannot be impaired by any argument that they are impracticable structures.

As has been said, the Wolf patent does not show a projecting flange. Nor is the recess therein shown of the peculiar form adapted to receive and engage a flaring flange. Nevertheless, they would seem to engage sufficiently to obviate the necessity of soldering the inside of the neck, notwithstanding Wolf proposed to solder or rivet his overlapping edges. The engaging devices of the patent in suit approximate more nearly to locking devices in function than do those of the Wolf patent, and it may be true, as is insisted by the complainant, that they are adapted to secure a tighter joint. It is doubtful whether without the aid of soldering or riveting they would always suffice to hold the breast member and the mouth member from pulling apart

in use, and it appears that the complainant, in manufacturing its cans, solders the joint on the outside of the can. If they suffice, however, when the parts are assembled, to engage them so tightly that the seam on the inside of the neck will be completely filled after the usual spinning and retinning operations have been applied to the can, whereas a seam like that of the Wolf patent cannot be made sufficiently tight without the further operation of soldering, the change in the form of the engaging devices is an improvement of sufficient value and utility to support a patent.

The question whether the making of the change was invention, or whether it was anything more than application of ordinary mechanical adaptation in devising suitable means to an end, is not entirely free from doubt. In the view which we have reached upon the issue of infringement, this is a question which need not be considered.

The can of the defendant which is alleged to infringe, and which is referred to in the proofs as the "John Street can," does not have the flaring flange which is an indispensable part of the first claim of the patent in suit. Not only does it not have a flaring flange, but it has no flange whatever, and nothing which in any sense performs the function of a locking flange. The recess in this can differs as much from the recess in the patented can as that does from the recess in the can of the Wolf patent. The two parts interlock or engage only in the sense that the same parts do in the can of the Wolf patent. Regarded separately or collectively, the engaging devices differ as essentially from those of the can of the patent as those do from the engaging devices of the Wolf patent. We conclude that infringement was not established.

The decree is reversed, with costs of this court, and with instructions to the court below to dismiss the bill with costs.